NELSON P. COHEN
United States Attorney

SUSAN LINDQUIST
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Rm. 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
susan.lindquist@usdoj.gov

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GREGORY JOHNSON and KIMBERLY JOHNSON, individually and on behalf of their minor children, MADISON JOHNSON and ALEXANDER JOHNSON,<br><br>　　　　　　　Plaintiffs,<br><br>　vs.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　　Defendant. | ) Case No. 3:06-cv-00120-RRB<br>)<br>)<br>)<br>) **DEFENDANT'S MOTION FOR**<br>) **PARTIAL SUMMARY**<br>) **JUDGMENT**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

　　　The United States of America, through counsel, moves pursuant to Fed. R.

Civ. P. 56 for summary judgment on Ms. Johnson's claim for negligent infliction

of emotional distress (NIED), and alternatively, Ms. Johnson's claim that she may recover lost wages on her NIED and loss of consortium claims. Ms. Johnson does not claim that she suffered any physical injury in addition to her alleged emotional distress, she was not owed a preexisting duty by the United States, and she does not meet the criteria for a bystander claim. Policy reasons and case law from other jurisdictions counsel against creating a new exception to the physical-injury rule for NIED claims in medical malpractice cases.

Ms. Johnson cannot recover for future wage loss because the alleged loss results from her husband's injuries and not from any emotional distress or loss of consortium.

**FACTS**

Kimberly Johnson and her husband Gregory lived in Unalakleet, Alaska during the relevant times for this motion. (Compl. ¶ 1.) In May of 2004, Gregory Johnson injured his back by lifting and moving cases of computers. (Compl. ¶ 8.) Mr. Johnson began experiencing increasing back pain during the evening of May 21 and slept part of the night in a recliner, then moved to a bed. (Id. at 28:5-30:14.) Mr. Johnson alleges that his condition worsened and he allegedly did not get out of bed again until he was transported to Anchorage. (Compl. ¶ 11.) On May 22, at her husband's request, Ms. Johnson called for a health care provider

from the health clinic. (Ex. B at 34:12-35:1.) Community Health Aide Kerilee Katongan responded to the call and she gave Mr. Johnson pain medication. (Compl. ¶ 9.) At various times on May 22, 23, and 24, Mr. Johnson was seen by David Davalos, a physician's assistant, who treated Mr. Johnson and arranged for Mr. Johnson's transportation to Anchorage. (See Compl. ¶¶ 10-14.) Ms. Johnson was present during at least some of the times that Ms. Kantongan and Mr. Davalos saw Mr. Johnson. (Ex. A at 27:20-21; 37:1-3; 79:24-80:10.)

On Sunday morning, May 23, after Mr. Johnson had experienced an involuntary bowel movement during the night, the Johnsons and Mr. Davalos discussed the possibility of transporting Mr. Johnson to Anchorage via Medevac. (Id. at 49:24-50:23.) Mr. Johnson was transported by Medevac to Anchorage without his wife on Monday, May 24. (Compl. ¶ 14.)

Ms. Johnson discussed her emotional reaction to Davalos' treatment of her husband. Ms. Johnson explains that she was "frustrated" with the events prior to Mr. Johnson's transport to Anchorage and felt that Davalos "was not hearing the concerns that we felt we were sharing with him." (Ex. A at 61:23-62:3.) Ms. Johnson was "reassured" by Davalos about the nature of her husband's injury and the treatment he was providing. (Id. at 62:20-63:1.) She did not attempt to call friends (id. at 69:13-22), family (id. at 84:10-13), a hospital in Anchorage (id. at

52:13-15), or the doctor who had treated her husband's preexisting back injury (id. at 32:24-25), nor did she research her husband's symptoms on the internet (id. at 63:11-15). Even when her husband was flown to Anchorage by Medevac, Ms. Johnson had no intention of traveling to Anchorage herself to accompany him. (Id. at 68:14-21.)

      Dr. Timothy Cohen, a neurosurgeon, examined Mr. Johnson in Anchorage and then spoke with Ms. Johnson on the phone once in the afternoon of May 24 and for a second time around midnight or 1:00 am later that night. (Id. at 81:15-83:9.) In the first phone call, Dr. Cohen informed Ms. Johnson of the nature of her husband's injury and the potential for permanent paralysis. (Id. at 82:3-8.) Ms. Johnson states in her deposition that the phone conversations with Dr. Cohen were "the first that I had ever heard, during this entire ordeal, of anything of that magnitude." (Id. at 82:9-11.) In the period between phone calls, Ms. Johnson spent the time "crying and worried." (Id. at 82:17-21.) During this time, she also made plans to travel to Anchorage. (Id.) She was unable to fly to Anchorage until the next day. (Id. at 86:3-11.) The phone calls with Dr. Cohen also led Ms. Johnson to contact her parents. (Id. at 84:10-13.) Ms. Johnson explains that the call to her parents was "the first contact that we had had with family throughout this ordeal." (Id.)

Ms. Johnson is asserting a claim based on NIED.  (Compl. ¶¶ 22, 27, 32.) She does not assert any physical injuries to herself.  (See id.)  The complaint alleges a duty of care owed to Mr. Johnson, but no contractual, fiduciary, or other duty owed to Ms. Johnson.  (See Compl. ¶¶ 19, 24.)  Ms. Johnson has also asserts a loss of consortium claim.  (Compl. ¶¶ 22, 27, 32.)  Ms. Johnson is seeking to recover future wage losses as damages.  (Id.)  She claims that she will lose wages "as a result of Gregory Johnson's injuries."  (Id.)

## STANDARD OF REVIEW

Summary Judgment is appropriate when there "is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law," F. R. Civ. P. 56(c);  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party has the burden of showing that there is no genuine dispute as to material fact.  Celotex, 477 U.S. at 323-35.  To withstand summary judgment, the non-moving party must establish that there are genuine factual issues that may be reasonably resolved in favor of either party.  California Architectural Building Products v. Franciscan Ceramics., Inc., 818 F.2d 1466 (9th Cir. 1987).  There is no genuine issue of material fact when the relevant evidence in the record, taken as a whole, indicates that a reasonable fact finder could not return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

# ANALYSIS

## I.  MS. JOHNSON HAS FAILED TO SATISFY THE REQUIREMENTS FOR A VALID CLAIM FOR NIED.

Damages for NIED generally are not awarded unless the plaintiff suffers an accompanying physical injury.  Kallstrom v. United States, 43 P.3d 162, 165 (Alaska 2002); Hancock v. Northcutt, 808 P.2d 251, 257 (Alaska 1991).  There are only two established exceptions to the physical-injury rule.  Kallstrom, 43 P.3d at 165.  First, an NIED claim may be maintained without physical injury if the defendant owed the plaintiff a preexisting duty.  Chizmar v. Mackie, 896 P.2d 196, 203 (Alaska 1995).  Second, a claim may be maintained if a plaintiff experiences severe shock as a "bystander" to an event that causes injury to a third party.  Tommy's Elbow Room, Inc. v. Kavorkian, 727 P.2d 1038, 1043 (Alaska 1986).

Alaska law precludes Ms. Johnson's claim for NIED.  Ms. Johnson does not claim that any physical injuries accompany her alleged emotional distress.  Therefore, her claim must fall within one of the two recognized exceptions to be viable.  Kallstrom, 43 P.3d at 165.  As will be discussed below, the care providers who treated Ms. Johnson's husband owed no preexisting duty to her.  Additionally, the evidence in the record fails to establish a valid claim under the bystander theory of recovery.

### A. Ms. Johnson was Owed No Preexisting Duty

The care providers treating Gregory Johnson had no fiduciary or contractual relationship with Kimberly Johnson, and therefore her NIED claim does not qualify under the preexisting-duty exception. A plaintiff may only recover for NIED under this exception when a "defendant stands in a contractual or fiduciary relationship with the plaintiff and the nature of this relationship imposes on the defendant a duty to refrain from conduct that would foreseeably result in emotional harm to the plaintiff." Chizmar, 896 P.2d at 203. Such a relationship does not arise between providers of medical care and the relatives of their patients. M.A. v. United States, 951 P.2d 851, 856 (Alaska 1998). In M.A., the court determined that the physician who failed to diagnose a patient's pregnancy did not owe an independent duty to the patient's mother, and held that the mother could not recover under the preexisting-duty exception. Id.

As in M.A., the physician-patient relationship between the care providers and Ms. Johnson's husband does not extend to her. Additionally, Ms. Johnson does not allege and the record does not contain any evidence of a contractual agreement between her and the care providers. Therefore, Ms. Johnson cannot recover for NIED under the preexisting-duty exception.

B. <u>Ms. Johnson's NIED Claim Fails Under the Bystander Exception Because She Did Not Experience Shock by Learning of the Nature of Gregory Johnson's Injury Through a Sudden Sensory Observation.</u>

In Alaska, plaintiffs can only recover for NIED as a bystander if they satisfy the three-part test in <u>Dillon v. Legg</u>, 441 P.2d 912 (Cal. 1968). <u>Kallstrom</u>, 43 P.3d at 165; <u>Kavorkian</u>, 727 P.2d at 1043. In allowing recovery by a mother who witnessed the death of her child in a car accident, the <u>Dillon</u> court enumerated the relevant factors as follows:

> (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

441 P.2d at 920.

When it adopted the <u>Dillon</u> test for bystander recovery, the Alaska Supreme Court rejected a strict application of the second factor. <u>Kavorkian</u>, 727 P.2d at 1043. The court allowed a bystander claim by a father who did not witness a car accident, but had appeared on the scene in time to witness his daughter being pulled from the wreckage and who "perceived and suffered shock from observing his child's injury." <u>Id.</u> Although the court abandoned the requirement of a contemporaneous observance of the accident, it retained the requirement that the

shock to the plaintiff result from learning of the injury though a sensory observation of the injured victim.  Mattingly v. Sheldon Jackson College, 743 P.2d 356, 365-66.

In Mattingly, a father brought an NIED bystander claim where the defendant's alleged negligence caused a trench to collapse and injure his son.  743 P.2d at 364.  Mattingly was in Ketchikan when he learned of his son's injury from the accident, which had occurred in Sitka.  Id. at 365.  The court upheld the dismissal of Mattingly's NIED claim because the sensory observation of the injured son did not occur "more or less contemporaneously with the plaintiff's learning of the nature of the victim's injury."  Id. at 365-66.  Instead, since he had learned of the nature of his son's injury over the phone, Mattingly could prepare himself emotionally for seeing his son and "had time to steel himself during his flight to Sitka."  Id. at 366.

When it decided M.A., the Alaska Supreme Court reaffirmed its holding in Mattingly and held that a mother did not have an NIED bystander claim where a physician failed to diagnose her daughter's pregnancy.  951 P.2d at 856.  Despite the "devastating emotional impact" on the mother from learning of the pregnancy, the court did not allow a bystander claim because the mother was not observing the daughter at the time she learned of the physician's error.  Id.

Here, Ms. Johnson learned of her husband's potential paralysis from Dr. Cohen over the phone.  Ms. Johnson explains that this phone call was "the first that I had ever heard, during this entire ordeal, of anything of that magnitude."  That phone conversation with Dr. Cohen, and the follow up call later that night, were the first events that triggered her crying and worry, and that led Ms. Johnson to contact her parents.  This call to her parents was "the first contact that we had had with family throughout this ordeal."

There was no contemporaneous sensory observance of Mr. Johnson at the time of the phone call, since Ms. Johnson was in Unalakleet and Mr. Johnson was in Anchorage.  Ms. Johnson was unable to fly to Anchorage to visit her husband until the next day.

Like the father's experience in <u>Mattingly</u>, Ms. Johnson's alleged shock at learning of the true nature of her husband's injuries did not occur contemporaneously with observing him in the hospital.  Ms. Johnson had no "sudden sensory observation" of her husband, but instead had adequate time to "steel" herself mentally in preparation for observing her husband's paralysis.  <u>See</u> <u>Mattingly</u>, 743 P.2d at 365-66.

The record does not contain evidence that Ms. Johnson experienced any other potentially shocking event which could cause the kind of emotional distress

envisioned by the bystander test. Ms. Johnson was present during at least some of the time the care providers were treating her husband, but her testimony does not support the conclusion that any emotional distress she may have experienced derived from shock at witnessing their actions. Although Ms. Johnson states that she was "frustrated" that Davalos was "not hearing the concerns that we felt we were sharing with him," she was "reassured" about the nature of her husband's injury and that he was being treated appropriately. If Ms. Johnson experienced the emotional distress required to establish an NIED claim under the bystander exception, it was from the delayed knowledge that her husband could be paralyzed and not from Davalos' treatment of her husband. Prior to her phone conversations with Dr. Cohen, she did not attempt to call friends, family, hospitals in Anchorage, or the doctor who had treated her husband's preexisting back injury, nor did she research her husband's symptoms on the internet. Lastly, she had not planned to accompany her husband to Anchorage before speaking with Dr. Cohen.

Ms. Johnson's testimony clearly demonstrates that the triggering event for the alleged emotional distress did not occur contemporaneously with a sensory observance of her injured husband. <u>Mattingly</u> precludes an NIED claim under the this fact pattern.

Johnson v. United States
3:06-cv-00120-RRB                                      -11-

### C. Policy Reasons Counsel Against Extending the NIED Bystander Exception in Medical Malpractice Cases.

The Alaska Supreme Court has recognized the possibility of expanding the narrow exceptions to the physical-injury rule for NIED, but has indicated that additional exceptions "will not be easily established." Kallstrom, 43 P.3d at 166-67.  In Kallstrom, the court denied recovery where the plaintiff, allegedly on account of the defendant's negligence, accidently injured a nine-year-old girl when the plaintiff gave the girl a lye-based detergent to drink, thinking it was fruit juice.  Id. at 168.  There, the court refused to create a new exception for cases where the plaintiff becomes an "unwitting instrument of death or serious injury to another through the negligence of the defendant."  Id.  The court concluded that exceptions to the physical-injury rule should be limited to "isolated situations where courts have found that the special circumstances surrounding a claim for emotional damages serve as a sufficient guarantee that the claim is neither false nor insubstantial."  Id. at 167 (quoting Chizmar, 896 P.2d at 202).

Concern over false claims and the potential negative impact on medical care has led courts in jurisdictions with NIED laws similar to Alaska's NIED law to conclude that the medical malpractice context does not provide this "sufficient guarantee."  See, e.g., Huggins v. Longs Drug Stores Cal., 862 P.2d 148 (Cal.

1993); Gendek v. Poblete, 654 A.2d 970 (N.J. 1995); Edinburg Hosp. Auth. v. Trevino, 941 S.W.2d 76 (Tex. 1997).

In Huggins, the California Supreme Court refused to allow NIED recovery by parents who had administered five times the prescribe dosage of a medication to their infant son because of a pharmacy error. 862 P.2d at 154. The parents' bystander claim was rejected because they lacked a "contemporaneous awareness that the victim was being injured by the negligent conduct." Id. at 151 n.3. In refusing to extend liability, the court cited the resultant increase in medical malpractice insurance costs and the concern that the self-protective measures that care providers would institute in response could interfere with "the provision of optimal care to the patient." Id. at 154.

The New Jersey Supreme Court in Gendek justified a similar restriction on NIED claims by patients' relatives:

> Although the law recognizes that at times the severe emotional trauma accompanying the tortious death or injury of a family member may be compensable, such a claim is narrowly circumscribed in the context of a medical misdiagnosis or failure to act. In the context of health care, life and physical wellbeing are often at stake and frequently at risk, and injury and death are not unforeseeable. In considering the standards that govern an appropriate duty of care and limitations of liability in that setting, we must be especially mindful of the principles of sound public policy that are informed by perceptions of fairness and balance. We therefore insist that an immediate, close and clear involvement or connection be present between a person suffering emotional distress and the conduct of the professional

>healthcare providers whose fault has contributed to the grave or fatal injuries of a related loved one.

654 A.2d at 975-976.

Texas adopted a complete bar to bystander recovery in medical malpractice cases. <u>Trevino</u>, 941 S.W.2d at 81. In <u>Trevino</u>, the court recognized that Texas followed a liberal approach to the <u>Dillon</u> factors, which it explained as follows: "[t]hese factors are to be interpreted flexibly, however, and the court should determine in each case 'whether the accident and harm was <u>reasonably</u> foreseeable.'" <u>Id.</u> at 80 (quoting <u>Freeman v. City of Pasadena</u>, 744 S.W.2d 923, 924 (Tex. 1988)).[1] In spite of its flexible approach to the <u>Dillon</u> factors, the court rejected bystander recovery in medical malpractice cases because there is not a sufficient guarantee that a person who observes the administration of medical treatment will suffer emotional distress caused by any negligence in the treatment, as distinguished from distress caused by merely witnessing the treatment itself. <u>Id.</u> at 81. It noted that even beneficial medical treatment may "shock the senses of the ordinary bystander." <u>Id.</u> The likelihood of care providers limiting visitation rights

---

[1] This language tracks Alaska's adoption of the <u>Dillon</u> factors in <u>Kavorkian</u>: "The touchstone of <u>Dillon</u> . . . is the reasonable foreseeability that the plaintiff-witness would suffer emotional harm." 727 P.2d at 1043.

as a consequence of bystander liability also weighed against allowing recovery. Id. at 80.

The Alaska Supreme Court has not directly considered the question of whether bystander NIED claims should be allowed in the medical malpractice context.  See, e.g., M.A., 951 P.2d at 856-57 (claim did not satisfy the bystander test and the court didn't consider whether policy considerations should bar such claims); Chizmar, 896 P.2d at 204 (plaintiff was a direct victim and the holding did not affect the rules for bystander recovery).  When approaching a new issue in NIED law, the court has demonstrated a tradition of looking to the law in other jurisdictions, particularly California.  E.g. Chizmar, 896 P.2d at 201-05; Kavorkian, 727 P.2d at 1040-43.  The high courts of California, New Jersey, and Texas have stated policy reasons which strongly advise against expanding bystander liability in medical malpractice cases.

## II.   EVEN IF MS. JOHNSON HAD STATED A VALID NIED CLAIM, SHE SHOULD NOT BE ABLE TO RECOVER PECUNIARY DAMAGES THAT STEM FROM HER HUSBAND'S PHYSICAL CONDITION AND NOT FROM HER EMOTIONAL DISTRESS OR LOSS OF CONSORTIUM.

Ms. Johnson cannot recover future wage losses as damages for her emotional distress claim because this loss is caused by her husband's injuries and not from either her emotional distress or loss of consortium.  A plaintiff may only

recovery economic damages that are "the natural and probable consequence of a defendant's negligence."  Mattingly, 743 P.2d at 361 (quoting People Express Airlines v. Consol. Rail Corp., 495 A.2d 107, 118 (N.J. 1985)).  These damages must be "demonstrably within the risk created by a defendant's negligence."  Id.

Ms. Johnson alleges in her complaint that she "will suffer future wage loss as a result of Gregory Johnson's injuries."  Ms. Johnson does not allege that her wage loss is causally connected with either her emotional distress or loss of consortium.  Since her potential lost wages allegedly result from her husband's injuries, she would have suffered the loss regardless of whether or not the care providers treating her husband inflicted emotional distress on her.  Similarly, she would suffer the wage loss whether or not she experienced a loss of consortium.  Future wage losses, therefore, cannot be said to be within the risk created by any negligence towards Ms. Johnson, and she should be precluded from recovering these as damages on her NIED and loss of consortium claims.

## CONCLUSION

Ms. Johnson's NIED claim is precluded by Alaska law.  Ms. Johnson does not claim that any physical injuries accompany her emotional distress; and Alaska law only allows recovery for NIED in two narrow exceptions in such a case.

The physician-patient relationship does not extend to Ms. Johnson, and she alleges no contractual or fiduciary duty owed to her by the United States. Therefore, she may not recover under the preexisting-duty exception.

Her claim does not satisfy the requirements for recovery under the bystander exception because she did not learn of the true nature of Mr. Johnson's injuries until her phone conversation with Dr. Cohen. There was no sudden shock from a contemporaneous sensory observance of the injury, and Ms. Johnson had time to prepare herself for her husband's permanent injuries.

Other jurisdictions with NIED law similar to Alaska's have limited or barred recovery for bystander claims in medical malpractice cases. An expansion of liability would lead to increased health care costs and greater restrictions on patient visitation rights.

Even if Ms. Johnson had stated a valid NIED claim, she cannot recover for future wage losses. These losses stem from her husband's injuries and would occur regardless of her emotional distress or loss of consortium.

For the foregoing reasons, the United States asks the Court to grant it partial summary judgment.

Respectfully submitted this 2nd day of August, 2007, in Anchorage, Alaska.

NELSON P. COHEN
United States Attorney

s/ Susan J. Lindquist
Assistant U. S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-3378
Fax: (907) 271-2344
E-mail:susan.lindquist@usdoj.gov
AK #9008053

**CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2007
a copy of the foregoing **DEFENDANT'S MOTION**
**FOR PARTIAL SUMMARY JUDGMENT** served
electronically on Ray R. Brown.

s/ Susan J. Lindquist