1  Ray R. Brown
   DILLON & FINDLEY, P.C.
2  1049 W. 5th Avenue, Suite 100
   Anchorage, AK  99501
3  Phone 277-5400
   Fax   277-9896
4

5

6              IN THE UNITED STATES DISTRICT COURT

7            FOR THE DISTRICT OF ALASKA AT ANCHORAGE

8

9

10 GREGORY JOHNSON and KIMBERLY  )
   JOHNSON, individually and     )
11 on behalf of their minor      )
   children, MADISON JOHNSON and )
12 ALEXANDER JOHNSON,            )
                                 )
13           Plaintiffs,         )
                                 )
14 vs.                           )
                                 )
15 UNITED STATES OF AMERICA,     )
                                 )
16           Defendant.          )
   _____)  Case No. 3:06-CV-00120-RRB
17

18        **PLAINTIFFS' OPPOSITION TO**
   **DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

19

20      Gregory Johnson was permanently paralyzed and lost bowel,

21 bladder, and sexual function as a result of the negligence of

22 David Davalos, a physician's assistant (PA) in Unalakleet and

23 Dr. Karen O'Neill, a medical doctor at Norton Sound Health

24 Corporation.  The Government has filed a motion for partial

25

26 Gregory Johnson, et al. v. USA, et al.

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

summary judgment asking this Court to dismiss Kim Johnson's claims for negligent infliction of emotional distress and for wage loss resulting from them having to relocate.

Relevant facts are presented below, followed by a discussion of the applicable law. After review, plaintiffs respectfully request this Court to hold that both claims, NIED and wage loss damages for Kim Johnson, are authorized by law upon the facts of this case.

**FACTUAL BACKGROUND**

Greg Johnson was a 43 year-old Director of Curriculum and Instruction for the Bering Strait School District when he "tweaked" his back while lifting two portable computer labs on Friday, August 21, 2004.[1]  He was taking the labs to the airport because he was scheduled to fly from his home in Unalakleet the next day to lead a training class in Anchorage the following week.[2]

Greg began experiencing discomfort about 50 minutes after lifting the boxes.[3]  When he was cooking dinner that night, his

---

[1]     See Exhibit A, Kim Johnson's Deposition, p. 18, ln. 11-20.

[2]     See Exhibit B, Greg Johnson's Deposition, p. 18, ln. 6-25, p. 19, ln. 1-2.

[3]     *Id.* at p. 23, ln. 16-18.

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 • FAX (907) 277-9896

pain increased to the point that he could not finish scrambling the eggs he was preparing for his family's dinner.[4]  He told his wife, Kim, that he needed her to finish cooking dinner while he went to sit down.[5]

Within a couple of hours, Greg's condition deteriorated to the point that he could hardly tolerate the pain of sitting or standing.[6]  He sat down in the recliner where he stayed throughout the evening, eating dinner, and then trying to fall asleep, until he moved to the bed in the guest bedroom in the middle of the night.[7]  Greg was able to walk to the bathroom that night, but each step was painful.[8]  By early Saturday morning he was in such excruciating pain, he asked Kim to call 911.[9] Although he did not know what they could do to help him, he "was just in more pain than (he) had ever been in his life, and (he) wanted some help."[10]

---

[4]    *Id*. at p.28, ln. 6-14.

[5]    *Id*. at p. 28, ln. 15-17.

[6]    Exhibit A, Kim Johnson's Deposition at p. 23, ln. 9-11.

[7]    Exhibit B, Greg Johnson's Deposition at p. 29, ln. 14-20.

[8]    *Id*. at p. 29, ln. 22-25, p. 30, ln. 1-4.

[9]    *Id*. at p. 34, ln. 23-25.

[10]   *Id*. at p. 36, ln. 14-16.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 • FAX (907) 277-9896

Kerilee Katongan, a Community Health Aide with Norton Sound Health Corporation, arrived at the Johnsons' residence around 7:00 a.m. the morning of August 22, 2004.[11]  Ms. Katongan performed a basic exam[12] and then gave Greg Johnson an injection of Toradol, a pain medication.[13]  The plan when she left was that she would report to the clinic for further direction.[14]

Kerilee Katongan returned to the Johnsons' residence with David Davalos, a Physician Assistant - Certified (PA), around midday on Saturday, August 22, 2004.[15]  When PA Davalos arrived, Greg Johnson was lying on his side, still on the guestroom bed.[16]  PA Davalos asked Greg what happened and about his history and symptoms, then performed a brief physical examination.[17]  PA Davalos ran his fingers down Greg's spine and located the area

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 • FAX (907) 277-9896

---

[11]    See Exhibit C, Kerilee Katongan's Deposition at p. 43, ln. 18-25, p. 44, ln. 1-5.

[12]    Exhibit A, Kim Johnson's Deposition at p. 25, ln. 18-20.

[13]    See Exhibit D, "Village Clinic Visit Form," 5/22/04.

[14]    Exhibit C, Kerilee Katongan's Deposition at p. 46, ln. 14-19, p. 47, ln. 17-19.

[15]    Exhibit A, Kim Johnson's Deposition at p. 29, ln. 6.

[16]    Exhibit B, Greg Johnson's Deposition at p. 44, ln. 12; Exhibit C, Kerilee Katongan's Deposition at p. 66, ln. 24-25.

[17]    Exhibit B, Greg Johnson's Deposition at p. 44, ln. 19-24.

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 • FAX (907) 277-9896

of pain in the lower back.[18]   He recorded the fact that the pain made it impossible for Greg to sit up and that Greg had decreased dorsiflexion (abnormal limit on raising the foot toward the knee).[19]

Despite the fact that Greg could not sit up, stand, or travel to Anchorage by commercial carrier as he had anticipated that day, PA Davalos chose simply to monitor Greg's condition, give him pain medication, and reevaluate on Sunday whether Greg could travel to Anchorage via commercial carrier at that time.[20]

PA Davalos concluded on Saturday that Greg had a bulging disk.[21]   He discouraged Greg from going to Anchorage because he believed that no one in Anchorage would be available to treat him that day.[22]   Even though PA Davalos concluded on Saturday that Greg needed medical care outside of the village,[23] a medevac to Anchorage or Nome was not proposed as an option.[24]   At no time

---

[18]   *Id*. at p. 45, ln. 25, p. 46, ln. 1-3.

[19]   Exhibit D, "Village Clinic Visit Form," 5/22/04.

[20]   See Exhibit E, David Davalos' Deposition at p. 129, ln. 23-25, p. 130, ln. 21-25, p. 131, ln. 1-9.

[21]   *Id*. at p. 118, ln.21-25, p. 119, ln. 1-4.

[22]   *Id*. at p. 131.

[23]   *Id*. at p. 139, ln. 24-25.

[24]   Exhibit A, Kim Johnson's Deposition at p. 35, ln. 4-9.

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 • FAX (907) 277-9896

on any of the dates in question did PA Davalos ever advise Greg or Kim Johnson that Greg's injury could result in permanent lower extremity paralysis, loss of bowel and bladder control, and loss of erectile function.[25]

At some point during Saturday, August 22, 2004, Greg felt the need to urinate.[26]  Because he was unable to sit, stand, or walk, his only option was to urinate into a Ziploc bag, which his wife provided and assisted with emptying.[27]  As the day continued, Greg began experiencing numbness in his left foot, which Kim rubbed for a while, and it seemed to "wake up."[28]  Out of concern, Kim called PA Davalos again, and he returned to the Johnson home.  He examined Greg's feet and said that it was just circulation issues and that she should occasionally massage his feet for him.[29]  Kim told PA Davalos that Greg's back pain was not responding to the pain medication he had provided.[30]

---

[25]  Exhibit E, David Davalos' Deposition at p. 153, ln. 18-25, p. 154, ln. 1-6.

[26]  Exhibit B, Greg Johnson's Deposition at p. 51, ln. 23-25.

[27]  *Id*. at p. 52, ln. 1-3.

[28]  *Id*. at p. 52, ln. 10-13.

[29]  Exhibit A, Kim Johnson's Deposition at p. 42, ln. 3-13.

[30]  *Id*. at p. 42, ln. 14-16.

By Saturday evening, Greg was having difficulty stopping his urination.[31]  He was able to urinate into the Ziploc bag, but he was unable to stop the stream, and it would dribble onto his shorts and the sheets of the bed on which he was lying.[32]  When asked whether the Johnsons told PA Davalos that Greg was urinating into Ziploc bags, Kim responded:

> Yes.  That was used to help explain how much pain he was in, that he couldn't even get off the bed to go pee, that he would rather have to lie on the bed, as a 43-year-old male, and have his wife help him pee into a Ziploc bag, because he was in so much pain he couldn't get up and walk to the next room to use the restroom.[33]

On Sunday, May 23, 2004, Greg awoke early in the morning.[34] His pain level had remained constantly high throughout the night.[35]  By mid morning, he had urinated twice, both times he was incapable of stopping the flow of urine.[36]  He continued to experience numbness in his feet, but rubbing his feet no longer

---

[31]    Exhibit B, Greg Johnson's Deposition at p. 56, ln. 13-18.

[32]    *Id.*

[33]    Exhibit A, Kim Johnson's Deposition at p. 39, ln. 20-25. *See also* Exhibit F, "Village Clinic Visit Form," 5/23/04.

[34]    Exhibit B, Greg Johnson's Deposition at p. 58, ln. 13-14.

[35]    *Id.* at p. 58, ln. 16.

[36]    *Id.* at p. 58, ln. 18-25.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 • FAX (907) 277-9896

helped reduce the numbness.[37]  He "was really starting to get

scared."[38]  When defense counsel asked why he was scared, Greg

responded:

> The fact that I was having trouble urinating for the
> first time in 40 years and that this—my feet were
> going to sleep but now weren't waking up.  That was a
> significant change from the previous day when we last
> talked to him…I just knew that there were things going
> on with my body that I didn't understand, and I needed
> someone to help figure out what that was.  I mean, I
> was certainly scared that as we talked, you know, "I
> need to get some help."  Can I get up and get to a
> plane?  "How can I get up and get to a plane? I can't
> even feel my feet."[39]

Kim called PA Davalos on Sunday morning and informed him

that Greg had bladder control problems, that his pain was

"excruciating," the medicine was not helping anything, and that

his legs and feet were still tingling and feeling differently

than they did normally.[40]  PA Davalos came to the Johnsons'

residence again and performed a physical exam in which he noted

that Greg "...has dribbling problems, cannot stop urination."[41]

He also indicated that Greg had decreased strength with

---

[37]  *Id*. at p. 59, ln. 9-12.

[38]  *Id*. at p. 59, ln. 12.

[39]  *Id*. at p. 59, ln. 14-25, p. 60, ln. 1-5.

[40]  Exhibit A, Kim Johnson's Deposition at p. 52, ln. 25, p. 53, ln. 1-6.

[41]  See Exhibit F, "Village Clinic Visit Form," 5/23/04.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 • FAX (907) 277-9896

dorsiflexion in both feet and weak plantar flexion, that his legs were more numb than the day before, and that he was unable to sit himself up.[42]   PA Davalos diagnosed Greg with "progressing symptoms."[43]   In spite of his awareness that Greg was showing symptoms of a progressive neurological injury, PA Davalos continued to reassure Greg and Kim that the numbness and tingling were merely circulation problems from Greg lying down.[44]

On Sunday, Kim, Greg, and PA Davalos discussed getting Greg to Anchorage.  PA Davalos was adamant that Greg could get on Pen Air, a small commercial plane, on a regular seat fare if PA Davalos gave Greg a shot of pain killer.[45]   PA Davalos told Greg and Kim that the doctors' offices were not going to open on the weekend for a bulging disk.[46]   He told Greg that once he arrived in Anchorage he was going to need to find a way from the airport to the emergency room on his own, or wait until Dr. Voke, an

---

[42]   *Id.*

[43]   *Id.*

[44]   Exhibit B, Greg Johnson's Deposition at p. 62, ln. 21-24.

[45]   Exhibit A, Kim Johnson's Deposition at p. 56, ln. 21-25.

[46]   *Id.* at p. 57, ln.4-6.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 • FAX (907) 277-9896

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

orthopedic physician Greg had seen for a bulging disk the year before, was available.[47]

PA Davalos brought up the option of a medevac on Sunday for the first time, but told the Johnsons that he had spoken with someone in Anchorage, and there was no one there to accept a medevac.[48]  PA Davalos told them that they would have to wait another day.[49]  Greg was exhibiting signs of neurological injury,[50] yet PA Davalos continued to insist that the only option was to get Greg on a commercial flight to Anchorage.

Kim was becoming more and more distraught.  She was trying to take care of Greg, their 2 year-old daughter and was herself seven months pregnant at the time.[51]  She was aware Greg was losing the feeling in his feet, unable to stop the flow of urine, and unable to sit up or get out of bed, yet PA Davalos kept insisting that the only option available to them was for

---

[47]    Exhibit E, David Davalos' Deposition at p. 137, ln. 8-12; Exhibit A, Kim Johnson's Deposition at p. 57, ln. 4-9.

[48]    Exhibit A, Kim Johnson's Deposition at p. 57, ln. 16-22. Plaintiffs have a good faith belief that evidence at trial will establish this statement to be false.

[49]    *Id.*

[50]    Exhibit E, David Davalos' Deposition at p. 145, ln. 25, p. 146, ln. 1.

[51]    Exhibit A, Kim Johnson's Deposition at p. 62, ln. 5-12.

Greg to get on Pen Air and travel into Anchorage. She lost her temper, but PA Davalos just kept telling them both that he had a bad back himself, and Greg would get better.[52]

As Sunday progressed, Greg's numbness began to creep up from his feet to his lower legs.[53] Greg wasn't able to tell whether his legs were hot or cold.[54] Kim would squeeze his legs and tell him how long it took for the color in them to return to normal.[55] At some point during the late hours of Sunday night or early hours of Monday morning, Greg awoke soaked in his own urine.[56] As he and Kim attempted to clean it up, they discovered that he had also had an involuntary bowel movement.[57]

On Monday morning, May 24, 2004, PA Davalos arrived with Will Halleron, an EMT, to attempt to get Greg on the Pen Air flight.[58] Although they were able to get Greg on the stair

---

[52]    Exhibit E, David Davalos' Deposition at p. 170, ln. 8-22; Exhibit A, Kim Johnson's Deposition at p. 60-62.

[53]    Exhibit B, Greg Johnson's Deposition at p. 68, ln. 17-24.

[54]    *Id.*

[55]    *Id.*

[56]    *Id.* at p. 69, ln. 1-6.

[57]    *Id.* at p. 69, ln. 7-12.

[58]    *Id.* at p. 69, ln. 13-19.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 • FAX (907) 277-9896

chair, it was clear that Greg was in excruciating pain.[59]    Kim

watched as the men attempted to transport him, until Will

Halleron told PA Davalos that it was clearly not possible for

Greg to fly commercially.[60]  Kim stated:

> It was apparent to myself that Greg didn't have a lot
> of control of his legs, that he wasn't able to move
> them as they were trying to scoot him around the bed,
> that he wasn't able to lift his leg up and slide it
> over.  It was apparent to me that Greg was in pain
> beyond anything that he should have been having to
> endure.[61]

With the exertion of trying to move Greg, Greg involuntarily

urinated again.[62]  Kim assisted Greg in cleaning his urine soaked

clothes and helped him urinate into a Ziploc bag.

PA Davalos' physical examination on Monday, May 24th

revealed other signs of increasingly severe, bilateral nerve

injury, including Greg's inability to move his legs on demand

from the knees to the toes.[63]  PA Davalos' diagnosis was "lumber

back pain with neurological deficits, progressing."[64]    Even

though PA Davalos was aware as early as May 22nd that Greg needed

---

[59]    *Id*. at p, 70, ln. 8-15.

[60]    *Id*.

[61]    Exhibit A, Kim Johnson's Deposition at p. 74, ln. 9-15.

[62]    *Id*. at p. 75, ln. 3-4.

[63]    See Exhibit G, "Village Clinic Visit Form," 5/24/04.

[64]    *Id*.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 • FAX (907) 277-9896

to get treatment outside of the village, he did not request a medevac until the failed transport attempt on Monday, May 24, 2004.[65]  When PA Davalos finally requested a medevac, physicians at Norton Sound Regional Hospital approved it immediately.  The medevac arrived in Unalakleet around noon May 24th.

Greg was transported to Providence Hospital upon arrival in Anchorage.  He was seen by Dr. Cohen, a neurosurgeon, who diagnosed Greg's condition as cauda equina syndrome, a disorder affecting the bundle of nerve roots at the lower end of the spinal cord, and one of the few orthopedic emergencies.

Failure to receive timely treatment for this condition as a result of PA Davalos and Norton Sound Health Corporation staff's negligence caused Greg Johnson to be permanently paralyzed, and to lose bladder and bowel control and sexual function.  Greg Johnson, Kim Johnson, and their children have filed various claims, including a claim for negligent infliction of emotional distress for Kim Johnson.

The Government filed a Motion for Partial Summary Judgment seeking a ruling that Kim Johnson cannot recover for negligent infliction of emotional distress under the circumstances of this

---

[65]    Exhibit E, David Davalos' Deposition at p. 139, ln. 24-25. "He needed care outside of the village on the 22nd.  And then on the 23rd it reinforced it."

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

case.   The Government also asserts in their opening motion that Kim Johnson cannot recover future wages lost as a result of her having to relocate due to Greg Johnson's injury.

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and the moving party is entitled to a judgment as a matter of law."[66]  A genuine issue exists where the evidence before the court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party.[67]

In ruling on a motion for summary judgment, the court should not weigh the evidence or find the facts.[68]  The court's inquiry is limited to assessing the threshold issue of whether a genuine issue exists as to material facts requiring a trial.[69] Thus, the evidence of the non-moving party must be believed as

---

[66]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[67]   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[68]   *Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco & Firearms*, 477 U.S. 317, 322 (6th Cir. 2006).

[69]   *Anderson*, 477 U.S. at 249.

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 • FAX (907) 277-9896

true, all doubts must be resolved against the moving party, all evidence must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in the non-moving party's favor.[70]

## ARGUMENT

**A.    Kim Johnson was a Bystander and is Entitled to Recover Damages for Negligent Infliction of Emotional Distress.**

In Alaska, a person may recover for negligent infliction of emotional distress under certain circumstances. Although damages generally are not awarded for purely emotional harm, there is a recognized cause of action when, as here, a claimant was present at the time of injury to a relative.[71] The bystander rule, adopted in Alaska in *Tommy's Elbow Room, Inc. v. Kavorkian*, should be applied here to provide recovery for a claim on negligent infliction of emotional distress (NIED) for Kim Johnson.[72]

---

[70]    *See Beard v. Banks*, 126 S.Ct. 2572, 2578 (2006); *Hunt v. Cromartie*, 526 U.S. 541, 550-55 (1999); *Eastman Kodak Co. v. Image Technical Servs. Inc.*, 504 U.S. 451, 456 (1992); *Anderson*, 477 U.S. at 255; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970).

[71]    *Kallstrom v. United States*, 43 P.3d 162 (Alaska 2002) (citing *Hancock v. Northcutt*, 808 P.2d 251, 257 (Alaska 1991).

[72]    *Tommy's Elbow Room, Inc. v. Kavorkian*, 727 P.3d 1038 (adopting *Dillon v. Legg*, 441 P.2d 912, 920 (Cal. 1968)).

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

*Kavorkian* adopted the *Dillon v. Legg* guidelines for determining when a claim for negligent infliction of emotional distress may be asserted.  The *Dillon* case provided for recovery where the plaintiff is located near the scene of the accident, the shock results from a direct emotional impact from the sensory and contemporaneous observance of the accident, and a close relationship exists between the plaintiff and the victim.[73]

In *Kavorkian*, the Alaska Supreme Court allowed for the father of a daughter who was fatally injured in an automobile accident to assert a claim for NIED even though he was not present and did not witness the accident.[74]  The Court found that it was reasonably foreseeable that Mr. Kavorkian would suffer shock as a result of arriving at the scene of the accident.  The Court concurred with the California Supreme Court's liberal interpretation of the *Dillon* factors in *Ochoa v. Superior Court* (discussed hereinafter), confirming that *Dillon* did not require emotional distress to be caused by a brief and sudden occurrence viewed contemporaneously by the plaintiff in order to be compensable.[75]  The Court in *Kavorkian* determined that the

---

[73]   *Id.*

[74]   *Kavorkian*, 727 P.2d at 1043.

[75]   *Id*. at 1041.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

"…touchstone of *Dillon* is not a rigid requirement of sensory and contemporaneous observance of the accident, but rather is the reasonable foreseeability that the plaintiff-witness would suffer emotional harm."[76]

The Alaska Supreme Court cited and discussed *Ochoa v. Superior Court*, a California Supreme Court decision, in support of its holding in *Kavorkian*.[77]   *Ochoa* presents a similar factual scenario to this case and is particularly insightful with regard to the issues presently before this Court.[78]   In *Ochoa*, the plaintiffs' 13 year-old son, Rudy, was in the custody of Santa Clara County juvenile hall.  On March 23, 1981, Rudy became ill with an apparent cold.  He went to the infirmary for care and treatment on March 23rd and 24th.  The plaintiffs visited Rudy on March 24th.  When they saw him he was extremely ill and holding his left side in an attempt to relieve severe pain.  The plaintiffs spoke with juvenile hall authorities and expressed concern that their son was not receiving appropriate medical

---

[76]   *Id*. at 1043.

[77]   *Kavorkian*, 727 P.3d at 1041.

[78]   *Ochoa v. Superior Court*, 703 P.2d 1 (Cal. 1985).

<u>Gregory Johnson, et al. v. USA, et al.</u>
Case No. 3:06-CV-00120-RRB
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
Page 17 of 32

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 • FAX (907) 277-9896

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 • FAX (907) 277-9896

1  care.  The authorities reassured the plaintiffs that their son

2  was being appropriately treated.

3      On March 25, 1981, Rudy was admitted to the juvenile hall

4  infirmary for a bilateral pneumonia.  He had a temperature of

5  105 degrees.  When Ms. Ochoa went to visit her son in the

6  infirmary he was very pale, dehydrated appearing, and his skin

7  was clammy and sweaty.  Ms. Ochoa was distressed about his

8  condition and requested repeatedly to take her son to their

9  private physician.  Those requests were denied.  Ms. Ochoa

10 returned to her son's bedside to find him complaining of

11 excruciating pain under his left rib cage.  Ms. Ochoa applied

12 cold compresses to his skin, and was told by infirmary personnel

13 to leave.  Rudy continued to yell and scream, and he asked his

14 mother to summon a doctor.  The doctor was called, but never

15 examined Rudy while Ms. Ochoa was there.  When she left Rudy

16 that day, it was the last time she saw her son alive.

17     The California Supreme Court concluded that Ms. Ochoa

18 undoubtedly satisfied the first and last *Dillon* requirements,

19 those being that she was located near the scene of the accident

20 and that she and the victim were closely related.[79]  The primary

21 issue was whether, in order to state a cause of action under

*Dillon*, the child's injury must have been the result of a brief and sudden occurrence viewed contemporaneously by the plaintiff.[80]   The Court stated:

> Here Mrs. Ochoa was aware of and observed conduct by the defendants which produced injury in her child. She was aware of the fact that her child was in need of immediate medical attention.   To her knowledge the defendants' had failed to provide necessary care.   As her complaint alleges, she "experienced extreme mental and emotional distress and concern for her son and for (sic) the apparent outrageous neglect of medical care while she was present."   Like the parents in both *Nazaroff* and *Archibald*, she was able to perceive, and suffered shock, from the connection between defendants' conduct and her child's injury.[81]

The Court concluded: "We are satisfied that when there is observation of the defendant's conduct and the child's injury and contemporaneous awareness the defendant's conduct or lack thereof is causing harm to the child, recovery is permitted."[82] The Court reiterated that the touchstone of the *Dillon* analysis was whether the plaintiff was a foreseeable victim of the defendant's negligence.[83]

---

[79]   *Id*. at 6.

[80]   *Id*.

[81]   *Id*. at 8.

[82]   *Id*.

[83]   *Id*.

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 • FAX (907) 277-9896

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 • FAX (907) 277-9896

The facts in *Ochoa* are substantially similar to those in the present case.  Kim Johnson clearly satisfies the first and last factors of *Dillon*.  She was located at the scene of the injury.  She was physically present during all interactions with PA Davalos and was present, tending to her husband while he deteriorated neurologically, including at the onset of his paralysis and loss of bladder and bowel function.  Kim Johnson is involved in a close relationship with Greg Johnson as required by *Dillon*.[84]  At the time of this incident, Kim Johnson had been married to Greg Johnson for five years.  She is the mother of his then 2 year-old daughter, and was seven months pregnant with their second child.

Thus, the limited issue before this Court, as in *Ochoa*, is whether Greg Johnson had to suffer a brief and sudden injury, which was contemporaneously observed by his wife Kim, as argued by the Government.  *Kavorkian* and *Ochoa* provide guidance that, as long as Kim Johnson was a foreseeable victim, a single sudden occurrence is not a requisite to Kim's NIED claim.

---

[84]    98 A.L.R.5th 609 ("A relationship to the victim has consistently been held adequate for bystander recovery where the plaintiff is a member of the victim's immediate family, that is, where the plaintiff is the victim's spouse, child, parent, or sibling.  As a result the plaintiff-victim relationship is seldom questioned in such cases.").

Kim's distress and concern is evinced in the facts above. Though she made requests and voiced frustration throughout the three day time period, PA Davalos continued to assert that Greg could fly commercial carrier until the failed attempt to transport him Monday, May 24th. Kim was forced to watch her husband cry out in pain and be drugged up on narcotics and barely responsive. She had to watch as her able bodied and active husband lost his bladder and bowel control, and she was present and attending to her husband as he began to lose feeling in both of his feet and legs.

Kim was aware of and observed PA Davalos' actions and lack of action while her husband physically deteriorated, was miserable, and was suffering unrelenting pain and nerve damage. PA Davalos testified that he ran into Kim on Saturday, May 23rd at the grocery store:

> I remember Mrs. Johnson was very concerned about him, and rightfully so. Very concerned about him. And I think I ran into her at the store, at the AC Store. That's all I can remember. *I mean, after all these years, that's what I remember.*[85] (Emphasis added.)

Kim's distress was so apparent that three years after the incident her concern on Saturday is still something PA Davalos distinctly remembers.

---

[85]    Exhibit E, David Davalos' Deposition at p. 135, ln. 11-15.

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 • FAX (907) 277-9896

The distress Kim experienced over the three days PA Davalos treated her husband and when she was told by Dr. Cohen that Greg's paralysis and bladder, bowel, and sexual dysfunction were likely to be permanent due, to some extent, to the delay in transport to Anchorage for emergent surgery meets the criteria for her claim for negligent infliction of emotional distress.[86] The Defendant's Motion for Partial Summary Judgment should be denied.

The Government cites Alaska cases that are readily distinguishable from the present case.[87]  In *Kallstrom v. United States*, Blanche Kallstrom was an adult who unwittingly gave a lye-based caustic detergent to the child victim, instead of the fruit juice she believed she was pouring.  The child had an immediate reaction and was ultimately sent outside Alaska for permanent burns to her esophagus.  Ms. Kallstrom knew the child. They both lived in the small community of Dillingham.[88]

---

[86]    Exhibit A, Kim Johnson's Deposition at p. 82, ln. 1-8.

[87]    Plaintiffs' counsel represented Blanche Kallstrom in *Kallstrom v. United States*, a case certified by the Ninth Circuit Court of Appeals to the Alaska Supreme Court because it was a determinative question of Alaska law for which there was no precedent.  43 P.2d 162 (Alaska 2002).

[88]    Although Ms. Kallstrom was not named as a defendant in the suit, the government brought a third-party complaint against her for negligence, seeking an allocation of fault.  Ms. Kallstrom

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 • FAX (907) 277-9896

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 • FAX (907) 277-9896

The Alaska Supreme Court stated that there were only two exceptions to the physical injury requirement of NIED, and then analyzed Ms. Kallstrom's claim in light of those exceptions. The Court concluded that although Alaska courts have liberally applied the *Dillon* factors, they have not taken a liberal approach to the third requirement of a "close relationship."[89] The Court stated, "In Alaska, this relationship has always involved a blood relationship between plaintiff and victim."[90] Because Ms. Kallstrom was not a blood relative, the Court determined that the bystander exception did not apply.[91] Clearly, *Kallstrom* is distinguishable from the present case. Kim Johnson maintains a close relationship with Greg Johnson. She is Greg Johnson's wife and the mother of his two children. The holding in *Kallstrom* is neither controlling nor helpful in the present case.

The Defendant also cites to *Mattingly*, a case in which the plaintiff's NIED claim was rejected by the court, on facts

---

then filed a counterclaim against the government for her injuries caused by the government's negligence.

[89]    *Id*. at 165.

[90]    *Id*.

clearly different from those presented here.  Mr. Mattingly was in Ketchikan when he learned of the collapse of a trench that injured his son.  He discovered over the phone that his son had been injured, and did not witness any of the events that led to his son's injury.  Unlike *Mattingly*, Kim Johnson was aware of and observed her husband's physical deterioration as a result of PA Davalos' conduct, then learned that the nerve injuries were permanent.  Thus, *Mattingly* offers no insight in this case.

The Government seems to contend that the plaintiff must have been present at the actual time of *diagnosis*, claiming that Kim Johnson's conversation with Dr. Cohen "was the first that (she) had ever heard, during this entire ordeal, of anything of this magnitude."[92]  The Government asserts that Kim did not have contemporaneous sensory observance of Greg at the time of the phone call.  However, Greg's injury did not occur when Dr. Cohen diagnosed cauda equina syndrome.  Greg's injury occurred as a result of PA Davalos' failure to timely medevac Greg to a facility that could treat his deteriorating condition.  It was reasonably foreseeable that Kim would suffer emotional distress

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 • FAX (907) 277-9896

---

[91]   *Id*.  The Court also found that the pre-existing duty exception did not apply because the relationship between the government and Ms. Kallstrom was not contractual or fiduciary.

[92]   Defendant's Motion for Partial Summary Judgment at p. 4.

as she watched her husband become paralyzed and lose bladder and bowel function.    Thus, she is entitled to relief for negligent infliction of emotional distress.

**B.    Kim Johnson is Entitled to Damages Arising From Her Decrease in Wages that Will Occur as a Result of the Johnsons Having to Relocate Due to Greg Johnson's Injuries.**

Plaintiff has found no cases in Alaska, or any other jurisdiction, addressing whether a spouse is entitled economic damages for a decrease in wages that result from having to relocate to a city and state that can provide adequate medical care and more suitable living conditions for a disability caused by a defendant's conduct.

Under AS 09.55.547, damages are to be awarded in accordance with principles of common law.    Common law provides for the recovery of economic and non-economic damages.    Economic damages are defined by statute as "objectively verifiable monetary losses incurred as a result of the provision of, use of, or payment for, or failure to provide, use, or pay for health care services or medical products, and includes past and future medical expenses, *loss of past and future earnings*, *cost of obtaining domestic services*, burial expenses, loss of use of

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 • FAX (907) 277-9896

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 • FAX (907) 277-9896

property, cost of replacement or repair, loss of employment, and loss of business or employment opportunities."[93]

A plaintiff is entitled to recover damages for such loss as was proximately caused by the defendant's conduct.[94]  The general principle underlying the assessment of damages in tort cases is that an injured person is entitled to be placed in the position he or she would have occupied had it not been for the defendant's tort.[95]  Kim Johnson is a plaintiff who is entitled to recover damages related to future wage loss from having to move to a different community and being unable to earn the wages she is able to earn in her present location.  The family's move is necessitated by the injuries to Greg Johnson and will result in a loss of income to the family.

Very few Alaska cases deal with the recovery of a spouse's lost wages, and all of them involve situations where the injured person has claimed an economic loss for the cost of personal care services necessitated by the injury, and also sought spousal wage loss for the spouse performing personal care

---

[93]    AS 09.55.549(h)(1) (emphasis added).

[94]    *Transamerica Title Insurance Co. v. Ramsey*, 507 P.2d 492, 497 (Alaska 1973).

[95]    *Beaulieu v. Elliot*, 434 P.2d 665, 670-71 (Alaska 1971).

services in lieu of earning wages from employment outside the home.    Those cases are distinguishable because although Greg Johnson does claim damages for personal care services, the wage loss claim is not for Kim having to quit her job to provide personal care, and is thus not a double recovery.

In *Heritage v. Pioneer Brokerage & Sales*,[96] the trial court ruled that that evidence of William Heritage's lost wages due to his return from his job on the North Slope to assist in the nursing care of his wife in Juneau was not admissible.    The plaintiffs appealed this ruling.    The Supreme Court of Alaska found that it was not error to preclude the plaintiff's husband from recovering for lost wages, as this would result in double recovery.    The Court cited *Rodriguez v. Bethlehem Steel Corporation*, a decision by the Supreme Court of California:

> We do not doubt, as Mary Anne says in her declaration, that no hired nurse or attendant could give Richard the same degree of personal devotion, patience, and understanding that she as a wife can give him.    But should he prevail in his own cause of action against these defendants, he will be entitled to recover, among his medical expenses, the full cost of whatever home nursing is necessary.    To allow Mary Anne also to recover the value of her nursing services, however personalized, would therefore constitute double recovery.[97]

---

[96]    604 P.2d 1059 (Alaska 1079).

[97]    *Id*. at 1065. (citing *Rodriguez*, 525 P.2d 669, 687 (Cal. 1974).

Gregory Johnson, et al. v. USA, et al.
Case No. 3:06-CV-00120-RRB
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
Page 27 of 32

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 • FAX (907) 277-9896

Thus, the primary concern for the Court was whether or not lost wages for the difference between William Heritage's income on the North Slope and his income in Juneau due to his decision to provide nursing care to his wife would result in double recovery to the Heritages. The Court determined that it would. "We are not persuaded that damages based on this latter theory should be awarded, however, since a determination of when support of a close family relationship is necessary to the medical and psychological comfort of the injured individual is always an uncertain inquiry, and the extent of such damages attributable to an injury is, in our view, too speculative to be made part of the general recovery of tort victims."[98]

The Alaska Supreme Court also addressed the issue of lost wages for a spouse in *Glamann v. Kirk*.[99] In *Glamann*, a motorist brought a claim for injuries suffered as a result of a rear-end collision and asked for economic damages for lost wages for his wife while she missed work to drive him to appointments. Glamann argued that the wage loss claim of his wife should have been allowed because it would not result in the double recovery

---

[98]    *Id.*

[99]    29 P.3d 255 (Alaska 2001).

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

discussed in *Heritage v. Pioneer Brokerage & Sales*.  The Court

discussed the holding of *Heritage*:

> In *Heritage*, we considered whether a husband could recover on a wage loss claim when the lost wages were based on his **decision to provide nursing services to his injured wife**.  We held that if the husband's wage loss was "attributable to his decision **to provide nursing services to his wife**, he may not be permitted to introduce evidence of the losses at trial."  We also concluded that a determination of when support is necessary in a close family relationship is "too speculative to be made part of the general recovery of tort victims."[100]  (Emphasis added.)

The Court, ruling in accordance with its prior decision, found

that Mary Glamann's lost wages claim stemmed from her decision

to transport her husband to his medical appointments because he

was medicated and could not take himself.[101]   In light of

*Heritage*,  the Court declined to find these circumstances

warranted a wage loss claim.

The present case is quite different.  The Johnsons are

being forced to move to a city and state that can provide

adequate rehabilitation and treatment facilities and has more

suitable living conditions for a person with Greg's disability.

Kim's loss in wages is not attributable to a decision to provide

Greg with nursing care, nor is it speculative or uncertain.

When the Johnsons relocate, Greg and Kim will both experience a

---

[100]   *Id.* at 264-65.

Gregory Johnson, et al. v. USA, et al.
Case No. 3:06-CV-00120-RRB
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
Page 29 of 32

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

decrease in their salaries, benefits, and retirement. They will also need to pay medical expenses for medical treatment and rehabilitation, as Kim will not be leaving her employment to care for her husband. Greg's award of future medical care would not compensate Kim for the wage loss she will suffer as a result of leaving the Bering Strait School District. An award of damages for Kim's decrease in wages will not result in the double recovery the Alaska Supreme Court cases address. Kim's wage decrease was proximately caused by the defendant's conduct; thus, she is entitled to a claim for such damages.

### CONCLUSION

Contrary to the Government's assertion, it is difficult to imagine a more emotionally distressing experience than the one that Kim Johnson was forced to endure as a result of negligence on the part of David Davalos, PA and Norton Sound Health Corporation staff. Kim Johnson was present and observed as PA Davalos minimized Greg Johnson's injuries and failed to provide transport for him out of the village of Unalakleet to a facility capable of treating severe spinal cord injuries. She was forced to watch her husband in "excruciating pain" that was not alleviated with pain medication. Kim observed her husband lose

---

[101] *Id*. at 265.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

his bowel and bladder control, and tended to his physical and emotional needs as he began to lose feeling in his legs. Greg's permanent physical injury was a result of PA Davalos' lack of appropriate and adequate medical treatment. Kim suffered emotional distress as a result of witnessing PA Davalos' medical treatment, or lack thereof, for which she should be justly compensated.

Furthermore, Kim will be forced to relocate to a city and state that is better equipped to deal with Greg's disabilities. As such, she will suffer a decrease in pay. Because this decrease is not attributable to a decision to provide nursing services, it cannot be recovered through Greg's future medical treatment damage award. Thus, double recovery would not result in the instant case. Kim is entitled to a claim for lost wages as a result of relocating out of the Bering Strait School District that was proximately caused by the defendant's conduct. The plaintiffs therefore respectfully request this Court to deny the Defendant's Motion for Partial Summary Judgment.

///

///

///

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

DATED this 24th day of August 2007, at Anchorage, Alaska.

DILLON & FINDLEY, P.C.
Attorneys for Plaintiffs


By: s/Ray R. Brown
Ray R. Brown, ABA No. 8206012
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska  99501
Phone:  277-5400
Fax:    277-9896
Email:  ray@dillonfindley.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2007 a copy of the foregoing Plaintiffs' Opposition to Defendant's Motion for Partial Summary Judgment was served electronically on Susan J. Lindquist.


s/Ray R. Brown

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896