0001

```
 1          IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TEXAS
 2                    AUSTIN DIVISION

 3   JOSE DOMINGUEZ AND           )
     SANDRA DOMINGUEZ, BOTH       )
 4   INDIVIDUALLY AND AS NEXT     )
     FRIENDS OF EMILY             )
 5   DOMINGUEZ, THEIR MINOR       )
     DAUGHTER,                    )
 6        Plaintiffs,             )
                                  )
 7   VS.                          ) CIVIL ACTION NO.
                                  ) A 03 CA 134 JN
 8                                )
                                  )
 9   UNITED STATES OF AMERICA,    )
          Defendant.              )
10
     * * * * * * * * * * * * * * * * *
11
              ORAL AND VIDEOTAPED DEPOSITION OF
12                  STEVEN M. DAY, Ph.D.

13                  FEBRUARY 17, 2004

14   * * * * * * * * * * * * * * * * *

15             ORAL AND VIDEOTAPED DEPOSITION OF

16   STEVEN M. DAY, Ph.D., produced as a witness at the

17   instance of the PLAINTIFFS, and duly sworn, was taken

18   in the above-styled and numbered cause on the 17TH of

19   FEBRUARY, 2004, from 10:00 a.m. Pacific Time to 2:35

20   p.m. Pacific Time, before Brenda J. Wright, RPR, CSR

21   in and for the State of Texas, reported by machine

22   shorthand, at The Radisson Villa Hotel, 4000 South El

23   Camino Real, San Mateo, California, pursuant to the

24   Federal Rules of Civil Procedure and the provisions

25   stated on the record or attached herein.
```

EXHIBIT F
PAGE 1 of 4

0051

| | | |
|---|---|---|
| 1 | A. | Again, it's not my number, it's just |
| 2 | Strauss & Shavelle, that's what they bill my time at. |
| 3 | Q. | And so Strauss & Shavelle, they're the ones |
| 4 | that decide how much your time is billed at? |
| 5 | A. | Yes, yes. Because time away from the |
| 6 | office is time that they're not getting me doing the |
| 7 | research they want me to do and consulting, so -- |
| 8 | Q. | And they decide how much your salary is? |
| 9 | A. | Well, we negotiate that together, but... |
| 10 | Q. | Sure. They have the ultimate say so? |
| 11 | A. | They do. They do. |
| 12 | Q. | And how much is your salary, sir? |
| 13 | A. | Well, unfortunately, I'm not at liberty to |
| 14 | say. That's part of my agreement with them that I |
| 15 | will not discuss that. |
| 16 | Q. | Well, your salary derives predominantly |
| 17 | from expert witness testimony. Correct? |
| 18 | A. | The income that Strauss & Shavelle |
| 19 | generates predominantly from that, so in turn, I |
| 20 | guess my salary does as well. |
| 21 | Q. | Yes, sir. I'm going to ask you again. How |
| 22 | much is your salary from Strauss & Shavelle, sir? |
| 23 | | MR. JENNINGS: You're not entitled to |
| 24 | that. I object to it. He has given you his hourly |
| 25 | rate, he has told you how it's determined, he has |

EXHIBIT F
PAGE 2 of 4

0067

1   are probably more than 50 open files.

2      Q.  Okay. And so files that you cannot say

3   definitely are closed, you have more than 50 in your

4   office. Correct?

5      A.  I believe so, yes.

6      Q.  Do you have more than a hundred, sir?

7      A.  That I'm not for sure about.

8      Q.  But you might?

9      A.  I might. I might.

10     Q.  Okay.

11     A.  But --

12     Q.  Might you have more than 150, sir?

13     A.  I doubt it. I seriously doubt it. But,

14  again, I'm not keeping track of which ones are open

15  and closed and I don't know.

16     Q.  But you could. You might have more than

17  150. It's a possibility, if we go and we were to

18  open your files and count them, that could be true?

19     A.  It's possible. It's possible.

20     Q.  Okay. Might you have more than 200 open

21  files, sir?

22     A.  I can't even -- I can't even tell you. I

23  just can't say.

24     Q.  Okay. And that is yet -- that could be

25  true, that if we went and we opened up your file

EXHIBIT F
PAGE 3 of 4

0074

```
 1   review some records and give an opinion on life
 2   expectancy.  I don't recall specifically if a certain
 3   amount of money was discussed.  This came in the mail
 4   eventually, and I don't recall any prior conversation
 5   about that.
 6        Q.   But they had some experience with you.
 7   Correct?
 8        A.   They may have.
 9        Q.   Sure.  I mean, you've been retained as a
10   witness for them before.  Is that correct?
11        A.   For the U.S. Attorney's Office in --
12        Q.   San Antonio.
13        A.   -- San Antonio.  That's true.
14        Q.   And in addition to that, I mean, you've
15   been retained by other U.S. Attorney's Offices or
16   only the one in San Antonio?
17        A.   Oh, I've been retained by others as well.
18        Q.   Okay.  So the U.S. government has some
19   experience with you on how much it's going to cost to
20   take a case through trial with regard to your expert
21   witness fees?
22        A.   You're asking if that experience went into
23   this figure in this particular document, and I have
24   no way of knowing that.  I don't know how they came
25   up with that figure.  I just don't.
```

EXHIBIT F
PAGE 4 of 4