Ray R. Brown
DILLON & FINDLEY, P.C.
1049 W. 5th Avenue, Suite 100
Anchorage, AK  99501
Phone 277-5400
Fax   277-9896

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

GREGORY JOHNSON and KIMBERLY  )
JOHNSON, individually and     )
on behalf of their minor      )
children, MADISON JOHNSON and )
ALEXANDER JOHNSON,            )
                              )
          Plaintiffs,         )
                              )
vs.                           )
                              )
UNITED STATES OF AMERICA,     )
                              )
          Defendant.          )
_____)    Case No. 3:06-CV-00120-RRB

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE ISSUES OF
INFORMED CONSENT AND NEGLIGENCE**

I.    **INTRODUCTION**

Plaintiffs respectfully move this Court for an order granting partial summary judgment on two issues. First, summary

judgment should be entered against defendant for David Davalos, PA's failure to inform the Johnsons of the warning signs or symptoms of neurological decline to be aware of, the potentially devastating implications of his injury, and the potential sequelae from a delayed diagnosis of a progressing neurological injury.

Plaintiffs also seek entry of judgment against the defendant that defendant was negligent on May 22 and May 23, 2004, because the treatment provided by Norton Sound Regional Health Corporation's medical providers fell below the standard of care.[1]

## II.    FACTUAL BACKGROUND

Greg Johnson was a 43 year-old Director of Curriculum and Instruction for the Bering Strait School District when he "tweaked" his back while lifting two portable computer labs on Friday, May 21, 2004.[2]    He was taking the labs to the airport

---

[1]    28 U.S.C. §§ 1364(b) and 2674.  The Federal Tort Claims Act provides that the United States shall be liable for damages for tort claims to the same extent that a private party would be liable to the claimant, "in accordance with the law of the place where the act or omission occurred."

[2]    See Exhibit A, Deposition of Kim Johnson, dated 3/7/07, p. 18, ln. 11-20.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

because he was scheduled to fly from his home in Unalakleet the next day to lead a training class in Anchorage.[3]

At home and within a couple of hours of his initial injury, Greg's condition deteriorated to the point that he could hardly tolerate the pain of sitting or standing.[4]  He sat down in his recliner where he stayed throughout the evening, eating dinner, and then trying to fall asleep, until he moved to the bed in the guest bedroom in the middle of the night.  Greg was able to walk to the bathroom that night, but each step was painful.[5]  By early Saturday morning he was in such excruciating pain, he asked his wife, Kim, to call 911.[6]

Kerilee Katongan, a Community Health Aide with Norton Sound Health Corporation, arrived at the Johnsons' residence around 7:00 a.m. the morning of May 22, 2004.[7]  Ms. Katongan performed a

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

---

[3]    See Exhibit B, Deposition of Greg Johnson, dated 4/17/07, p. 18, ln. 6-25, p. 19, ln. 1-2.

[4]    Exhibit A, p. 23, ln. 9-11.

[5]    Exhibit B, p. 29, ln. 3-25, p. 30, ln. 1-4.

[6]    *Id*. at p. 34, ln. 23-25.

[7]    See Exhibit C, Deposition of Kerilee Katongan, dated 4/20/07, p. 43, ln. 18-25, p. 44, ln. 1-5.

basic exam[8] and then gave Greg Johnson an injection of Toradol, a pain medication.[9]

Kerilee Katongan returned to the Johnsons' residence with David Davalos, a Physician Assistant - Certified (PA), later on Saturday, May 22, 2004.[10]  When PA Davalos arrived, Greg Johnson was lying on his side, still on the guestroom bed.[11]  PA Davalos asked Greg what happened and about his history and symptoms.[12] He then performed a brief physical examination, by running his fingers down Greg's spine and locating the area of pain in his lower back.[13]  He recorded the fact that the pain made it impossible for Greg to sit up and that Greg had decreased bilateral dorsiflexion (abnormal limit on raising the foot toward the knee).[14]

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

---

[8]    Exhibit A, p. 25, ln. 17-20.

[9]    See Exhibit D, Patient Encounter for Greg Johnson, 5-22-2004.

[10]    Exhibit A, p. 28, ln. 25, p. 29, ln. 1-2.

[11]    Exhibit B, p. 44, ln. 10-15; Exhibit C, p. 66, ln. 20-23.

[12]    Exhibit B, p. 44, ln. 19-24.

[13]    *Id.* at p. 45, ln. 25, p. 46, ln. 1-3.

[14]    Exhibit D.

PA Davalos concluded on Saturday that Greg had a bulging disk.[15]  He discouraged Greg from going to Anchorage because he believed that no one in Anchorage would be available to treat him that day.[16]  Even though PA Davalos concluded on Saturday that Greg needed medical care unavailable in Unalakleet,[17] a medevac to Anchorage or Nome was not proposed as an option.[18]  At no time on any of the dates in question did PA Davalos ever advise Greg or Kim Johnson that Greg's injury could result in permanent lower extremity paralysis, loss of bowel and bladder control, and loss of erectile function.[19]  Furthermore, Greg and Kim were never informed of the significance of Greg's neurological deficits, the differential diagnoses of Greg's condition, or the potential warning signs they should watch for indicating neurological injury.[20]

---

[15]    See Exhibit E, Deposition of David Davalos, PA-C, dated 3/8/07, at p. 118, ln. 21-25, p. 119, ln. 1-4.

[16]    *Id*. at p. 131, ln. 1-6.

[17]    *Id*. at p 139, ln. 24-25.

[18]    Exhibit A, p. 35, ln. 3-9.

[19]    Exhibit E, p. 153, ln. 18-25, p. 154, ln. 1-6.

[20]    See Exhibit F, Deposition of David Potashnick, PA, dated 5/12/08, p. 79, ln. 6-22.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

During Saturday, May 22, 2004, Greg continued to feel the need to urinate.[21]  Because of his pain he was unable to sit, stand, or walk, so his only option was to urinate into a Ziploc bag, which his wife provided and assisted with emptying.[22]  As the day continued, Greg began experiencing numbness in his left foot.[23]  Out of concern, Kim called PA Davalos again, and he returned to the Johnson home.  PA Davalos did not perform another exam or document this visit.  He simply looked at Greg's feet and told the Johnsons that it was just circulation issues.[24]  Again, PA Davalos did not discuss the significance of Greg's symptoms of numbness in the legs, or the risks associated with continued delay of treatment in the face of such symptoms.

By Saturday evening, Greg was having difficulty stopping his urination.[25]  He was able to urinate into the Ziploc bag, but had difficulty stopping the stream of urine as it reached the top of the baggie.[26]

---

[21]     Exhibit B, p. 51, ln. 23-25.

[22]     *Id*. at p. 52, ln. 1-3.

[23]     *Id*. at p. 52, ln. 10-13.

[24]     Exhibit A, p. 42, ln. 3-13.

[25]     Exhibit B, p. 56, ln. 13-18.

[26]     *Id*.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

On Sunday, May 23, 2004, Greg awoke early in the morning.[27] By midmorning, he had urinated twice; both times he had difficulty stopping the flow of urine.[28]  He continued to experience numbness in his feet, but rubbing his feet no longer helped reduce the numbness.[29]  He "was really starting to get scared."[30]

Kim called PA Davalos on Sunday morning and advised him of Greg's condition.[31]  PA Davalos came to the Johnsons' residence again and performed a physical exam in which he noted that Greg "... has dribbling problems, cannot stop urination."[32]  He also indicated that Greg had decreased strength with dorsiflexion in both feet and weak plantar flexion, that his legs were more numb than the day before and that he was unable to sit himself up.[33] PA Davalos diagnosed Greg with "progressing symptoms."[34]

---

[27]   *Id.* at p. 58, ln. 9-14.

[28]   *Id.* at p. 58, ln. 18-25.

[29]   *Id.* at p. 59, ln. 9-12.

[30]   *Id.* at p. 59, ln. 12.

[31]   Exhibit A, p. 52, ln. 25, p. 53, ln. 1-6.

[32]   See Exhibit G, Patient Encounter Greg Johnson, 05-23-2004.

[33]   *Id.*

[34]   *Id.*

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

In spite of his awareness that Greg was showing signs and symptoms of a progressive neurological injury, PA Davalos continued to reassure Greg and Kim that the numbness and tingling were merely circulation problems from Greg lying down.[35] No information was provided to the Johnsons regarding the significance of continued decline in lower extremity function or the significance of his urinary symptoms.[36]

On Sunday, Kim, Greg, and PA Davalos discussed getting Greg to Anchorage. PA Davalos was adamant that Greg could get on Pen Air, a small commercial plane, on a regular seat fare if PA Davalos gave Greg a shot of pain killer.[37] PA Davalos told Greg and Kim that the doctors' offices were not going to open on the weekend for a bulging disk.[38] He told Greg that once he arrived in Anchorage he was going to need to find a way from the airport to the emergency room on his own, or wait until Dr. Voke, an orthopedic physician Greg had seen for low back pain the year before, was available.[39] Despite the fact that Greg was

---

[35]    Exhibit B, p. 62, ln. 21-24.

[36]    Exhibit E, p. 153, ln. 18-25, p. 154, ln. 1-6.

[37]    Exhibit A, p. 56, ln. 21-25.

[38]    *Id.* at p. 57, ln. 4-6.

[39]    *Id.* at p. 57, ln. 4-9.

exhibiting progressive signs of neurological injury,[40] PA Davalos continued to insist that the only option was to get Greg on a commercial flight to Anchorage.

At some point during the late hours of Sunday night or early hours of Monday morning, Greg awoke soaked in his own urine.[41]  As he and Kim attempted to clean it up, they discovered that he had also had an involuntary bowel movement.[42]

On Monday morning, May 24, 2004, PA Davalos arrived with Will Halleron, an EMT, to attempt to get Greg on the Pen Air flight.[43]  Although they were able to get Greg on the stair chair, it was clear that Greg was in excruciating pain.[44]  With the exertion of trying to move Greg, Greg involuntarily urinated again.[45]

PA Davalos' physical examination on Monday, May 24th revealed other signs of increasingly severe, bilateral nerve injury, including Greg's inability to stand or move his legs on

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

---

[40]    Exhibit E, p. 145, ln. 25, p. 146, ln. 1.

[41]    Exhibit B, p. 69, ln. 1-6.

[42]    *Id*. at p. 69, ln. 7-12.

[43]    *Id*. at p. 69, ln. 13-19.

[44]    *Id*. at p. 70, ln. 8-15.

[45]    Exhibit A, p. 75, ln. 3-4.

demand from the knees to the toes.[46]  PA Davalos' diagnosis was

"lumbar back pain with neurological deficits, progressing."[47]

Even though PA Davalos was aware as early as May 22nd that

Greg needed to get treatment outside of the village, he did not

request a medevac until the failed transport attempt on Monday,

May 24, 2004.[48]  When PA Davalos finally requested a medevac,

physicians at Norton Sound Regional Hospital approved it

immediately.  The medevac arrived in Unalakleet around noon on

May 24, 2004.

Greg was transported to Providence Alaska Medical Center

upon arrival in Anchorage.  He was seen by Dr. Cohen, a

neurosurgeon, who diagnosed Greg's condition as cauda equina

syndrome, a neurological/orthopedic emergency.

The plaintiffs have filed a claim against the government

alleging, amongst other things, a failure to obtain informed

consent.  The evidence is uncontroverted that PA Davalos

neglected to inform Greg and Kim Johnson of the risks of delayed

---

[46]    See Exhibit H, Patient Encounter Form for Greg Johnson, May 24, 2004.

[47]    *Id*.

[48]    Exhibit E, p. 139, ln. 24-25. PA Davalos: "He needed care outside the village on the 22nd.  And then on the 23rd it reinforced it."

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

treatment in the presence of progressive neurological injury, thus, no genuine issue of material fact exists, and the plaintiffs are entitled to a judgment as a matter of law. Further, there is no genuine issue of material fact that the treatment provided by Norton Sound Health Corporation employees in Unalakleeet on May 22 and 23, 2004, was negligent.

### III. <u>STANDARD OF REVIEW</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and the moving party is entitled to a judgment as a matter of law."[49]    A genuine issue only exists if the evidence before the court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party.[50] No such factual issues are present here.

---

[49]    *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[50]    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

LAW OFFICES<br>**DILLON & FINDLEY**<br>A PROFESSIONAL CORPORATION<br>1049 W. 5th Avenue, Suite 100<br>Anchorage, Alaska 99501<br>TEL. (907) 277-5400 · FAX (907) 277-9896

### IV.  <u>ARGUMENT</u>

A.  <u>As a Matter of Law, PA Davalos Had a Duty to Inform Greg and Kim Johnson of the Common Risks and Reasonable Alternatives to Delaying Treatment in the Presence of Progressive Neurological Injury and Breached that Duty When He Failed to do so.</u>

    1.  **PA Davalos had a duty to inform Greg and Kim Johnson of the common risks and reasonable alternatives to delaying treatment of a progressive injury.**

Alaska Statute 09.55.556(a) provides:

> A health care provider is liable for failure to obtain the informed consent of a patient if the claimant establishes by a preponderance of the evidence that the provider has failed to inform the patient of the common risks and reasonable alternatives to the proposed treatment or procedure, and that but for that failure the claimant would not have consented to the proposed treatment or procedure.

The Alaska Supreme Court has held that the physician's duty to disclose is measured by what a reasonable patient would need to know in order to make an informed and intelligent decision.[51] The reasonable patient standard applies because of the unique nature of the physician-patient relationship:

> The physician-patient relationship is one of trust. Because the patient lacks the physician's expertise, the patient must rely on the physician for virtually all information about the patient's treatment and health.  A physician therefore undertakes, not only to treat a patient physically, but also to respond *fully* to a patient's inquiry about his treatment, i.e., to

---

[51]  *Korman v. Mallin*, 858 P.2d 1145, 1148-49 (Alaska 1993); *Marsingill v. O'Malley*, 58 P.3d 495, 503 (Alaska 2002).

tell the patient everything that a reasonable person would want to know about the treatment.[52]

Under the reasonable patient standard, a physician must disclose those risks that are material to a reasonable patient's decision concerning treatment.[53]  The determination of materiality is a two step process.[54]  The first step is to define the existence and nature of the risk and the likelihood of its occurrence.[55]  The second step is to determine whether the probability of that type of harm is a risk which a reasonable patient would consider in deciding on treatment.[56]

The informed consent statute includes physician assistants and other healthcare providers acting within the course and scope of employment.[57]  Thus, PA Davalos was obligated to disclose the risks material to allow Mr. Johnson to make an informed decision concerning his treatment options.  For this

---

[52]    *Id.* (citing *Pederson v. Zielski*, 822 P.2d 903, 909 (Alaska 1991)).

[53]    *Id.* (citing *Hondroulis v. Schuhmacher*, 553 So.2d 398, 411 (La. 1989).

[54]    *Id.*

[55]    *Id.*

[56]    *Id.*

[57]    AS 09.55.560(2) defines "health care providers" as a "… physician or physician assistant licensed under AS 08.64," as well as "… an employee of a health care provider acting within the course and scope of employment."

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

court to decide on summary judgment that a healthcare provider has not disclosed sufficient information to allow a reasonable patient to make an informed decision about treatment, the record must establish that the healthcare provider failed to explain to the patient in lay terms the nature and severity of the risk and the likelihood of its occurrence.[58]

> **2.  The facts support that PA Davalos breached his duty to disclose sufficient information to the Johnsons to obtain informed consent as a matter of law.**

The evidence shows that no conversation took place between any Norton Sound Health Corporation medical staff and Greg and Kim Johnson regarding any differential diagnosis, the significance of progressive neurological deficits, or the risks associated with delayed diagnosis and/or treatment, including the possibility of Greg suffering from permanent paralysis and loss of bladder, bowel, and sexual function.

Plaintiffs submitted the following Request for Admission to the defendant United States:

> **REQUEST FOR ADMISSION NO. 9:** Admit that neither David Davalos nor any other NSHC employee advised Gregory Johnson of the potential sequelae from a delayed diagnosis of cauda equina syndrome.
>
> **RESPONSE:** Admit.[59]

---

[58]  *Id*. at 1150.

[59]  See Exhibit I, United States' Answers to Plaintiffs' First Request for Admissions, dated 2/23/07.

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

LAW OFFICES

**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

Additionally, during his deposition, PA Davalos admitted that he never discussed the possibility of paralysis or permanent loss of bladder, bowel, and sexual function resulting from neurological injury.

> Q:   Did you tell him [Mr. Johnson] that he could, if his symptoms continued to progress, lose bowel and bladder control?
>
> A:   No, I don't recall telling him that. That's something we look for.
>
> Q:   Do you recall telling him or did you tell him that he could lose his ability to walk forever if he waited?
>
> A:   No, I did not.[60]

PA Davalos never told Greg or Kim Johnson of possible risks and complications of delaying treatment with the signs and symptoms that Greg was exhibiting.[61]  There is no question that a reasonable patient would attach particular significance to the risk of permanent paralysis and loss of bladder, bowel, and sexual function, if given the information and make treatment decisions to avoid such risks.  Greg and Kim, in particular, would have attached significance to these risks had they been

---

[60]   Exhibit E, p. 153, ln. 23-25, p. 154, ln. 1-6.

[61]   See Affidavits of Greg and Kim Johnson, dated 6/23/08, in support of the instant motion.

Gregory Johnson, et al. v. USA, et al.
Case No. 3:06-CV-00120-RRB
MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
REGARDING THE ISSUES OF INFORMED CONSENT AND NEGLIGENCE
Page 15 of 32

1  informed of them.[62]    PA Davalos provided the Johnsons no

2  information about the potential risks and complications

3  associated with delaying Greg's treatment, thus failing to give

4  them sufficient information to allow the Johnsons to make an

5  informed and intelligent decision about Greg's treatment

6  options, including emergent transport to Anchorage.

7      Although no expert testimony is required under Alaska law

8  to establish PA Davalos' failure to obtain informed consent, the

9  Government's _only_ expert witness regarding the standard of care

10  for physician assistants, David Potashnick, PA-C, concurred that

11  PA Davalos had a duty to inform Greg of the potential sequelae

12  and risks associated with delayed treatment and that he breached

13  that duty.

14      David Potashnick, a PA presently working out of Barrow,

15  testified that the standard of care for a physician assistant is

16  as follows:

17
18          I believe that all patients should be apprised of
            what it is that you feel is wrong with them, that
19          you should apprise them of any treatment you plan
            to—for them, to give, and any possible—if you
20          believe there may be other things that may occur
            as a result of this, any possible things they
21          need to watch out for, to either return or to
            seek further attention.[63]

22
23
24  _____

25  [62]    _Id._

26

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

PA Potashnick testified that PA Davalos had a duty to inform Greg and/or Kim Johnson that they should watch for the development of additional symptoms such as bowel and bladder dysfunction:

> Q: All right. So going to the chart on May 22[nd], as it exists today, given his presenting signs and symptoms and the unusual nature that you've testified to, would this warrant advising the patient of red flags or other progressive signs or symptoms that they should be aware of and to— let me stop there.
>
> A: I would advise the patient of additional things that I wanted them to watch for, in order to have them contact me should any of those occur.
>
> Q: And what would those things be?
>
> A: If they suffered any bowel or bladder dysfunction or any progression of their signs and symptoms, if they were to get significantly worse.
>
> Q: Do you have any indication from this chart that Mr. Davalos provided that type of information to the Johnsons?
>
> A: I don't see any mention of that, no, sir.[64]

PA Potashnick also testified that PA Davalos' failure to provide such information fell below the standard of care:

> Q: But it was unreasonable not to tell him, in the face of this unusual chart on May 22nd, what red flags they should look for and whether they should contact, make further contact, and what

---

[63] Exhibit F, p. 49, ln. 17-24.

[64] *Id*. at p. 79, ln. 6-22.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

that meant in the context of this presentation, correct?

A:   I believe that if they were not apprised of the potential things that could happen, that if things to look for were not conveyed to them, that that would be something that would not be what I would have done.

Q:   That would be below the standard of care?

A:   Yes, sir.

Q:   And you're aware, from reading Mr. Davalos's deposition, that not only is that not documented, he acknowledged that he didn't warn the patient on May 22nd of these red flag signs and symptoms?

                    *    *    *

A:   … It seems to bear out what you're saying, yes, sir.[65]

Additionally, the Government retained Michael Grevitt, M.D., a British trained orthopedic physician practicing in England, to testify as to causation in this case. Dr. Grevitt testified as follows:

Q:   Do you have an independent claim [in England] for failure to provide enough information to a patient to make an informed decision?

A:   Yes.  We have certain breaches of duty with regard to informed consent.  We do.

Q:   So if a patient does not perform, is not provided adequate information to make an informed decision you can bring a claim here in England?

A:   Correct.

---

[65]    *Id.* at p. 87, ln. 12-25, p. 88, ln. 1, p. 90, ln. 3-4.

Q:    And an example of informed consent would be providing a patient that I just described with the red flags or warning signs in case their condition progressed, correct?

A:    That very much depends on what is perceived as the standard of care.

Q:    That is what you are here for.

A:    Yes, so with specific answer to your question, most spinal surgeons tell their patients if there are problems with urinary dysfunction or incontinence to contact the department, so yes, I believe it is the standard of care.[66]

PA Potashnick and Dr. Grevitt's testimony make it abundantly clear that PA Davalos had a duty to inform the Johnsons of the risks associated with delaying treatment in the face of progressive neurological injury and that he breached that duty.

All of the plaintiffs' experts retained to testify regarding the standard of care for physician assistants concur with defense experts PA Potashnick and Dr. Grevitt that PA Davalos' failure to provide this information to the Johnsons on May 22 and 23, 2004 fell below the standard of care. Kim and Greg Johnson aver that had they been informed on May 22, 2004 of the possible sequelae of delaying treatment, such as paralysis, bladder and bowel loss, and sexual dysfunction, they would have

---

[66]    See Exhibit J, Deposition of Michael Grevitt, M.D., dated 2/22/08, p. 33, ln. 4-24.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

sought alternate forms of treatment, or would have attempted on their own to identify another form of transport to Anchorage.[67] Therefore, plaintiffs have established all elements of their claim for failure to obtain informed consent and are entitled to judgment as a matter of law.

**B.    Defendant was Negligent as a Matter of Law on May 22 and May 23, 2004.**

    **1.    PA Davalos had a duty to have and to use the knowledge, skill, and care ordinarily exercised by physician assistants under the circumstances.**

Under Alaska law, medical malpractice actions are governed by AS 09.55.540, which provides:

    (a)    In a medical action based on the negligence or willful misconduct of a health care provider, the plaintiff must prove by a preponderance of the evidence

        (1)    the degree of knowledge or skill possessed or the degree of care ordinarily exercised under the circumstances, at the time of the act complained of, by health care providers in the field or specialty in which the defendant is practicing;

        (2)    that the defendant either lacked this degree of knowledge or skill or failed to exercise this degree of care; and

        (3)    that as a proximate cause of this lack of knowledge or skill or the failure to exercise the degree of care the plaintiff

---

[67]    See Affidavits of Greg and Kim Johnson, dated 6/23/08 in support of the instant motion.

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

suffered injuries that would not have otherwise been incurred.[68]

A healthcare provider is defined by statute as "… a physician or physician assistant licensed under AS 08.86."[69] Thus, a medical malpractice claim may be brought against David Davalos, a physician assistant for the Norton Sound Health Corporation, whose treatment in May 2004 is the basis of the present claim. In medical malpractice actions, a breach of professional duty may be found only on the basis of expert testimony.[70]

**2. PA Davalos Fell Below the Standard of Care When He Failed to Properly Perform and Document His Examination Of Greg Johnson on May 22, 2004.**

The standard of care required PA Davalos to perform a sensory examination on May 22, 2004, and to document the results of that examination. The examination PA Davalos performed on May 22, 2004 on Greg Johnson, as well as the documentation of that examination, fell below the standard of care for a physician assistant.

---

[68]    AS 09.55.540.  *See also Parker v. Tomera*, 89 P.3d 761, 766 (Alaska 2004).

[69]    AS 09.55.560(2).

[70]    *Trombley v. Starr-Wood Cardiac Group*, 3 P.3d 916, 919 (Alaska 2000).

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

1    Defendant's expert, PA Potashnick, testified that a sensory

2  examination[71] should have been performed by PA Davalos given Greg

3  Johnson's presenting signs and symptoms on May 22nd.  PA Davalos'

4  failure to perform a sensory examination and his lack of

5  documentation regarding his examination of Greg Johnson on May

6  22nd fell below the standard of care:

7

8    Q:    Is there—was there any sensory exam documented on
         the 22nd?

9    A:    I do not see an indication of that.

10   Q:    So if he had sensory deficits on the 22nd, either—
         well, again.  That would be—if you performed a
11        sensory exam, that would be a pertinent finding
         that you would put, whether it was positive or
12        negative, correct?

13   A:    Yes, sir.

14   Q:    And in the face of these signs and symptoms, a
         sensory exam would be within—you should perform a
15        sensory exam, correct?

16   A:    Yes, sir.[72]

17

18   Further, PA Potashnick testified that the performance of a

19  sensory exam, as well as other fundamental neurological tests,

20  was not documented in the "Patient Encounter Form:"

21

22  [71]   Q:    … can you tell me basically what you would do to
         conduct a lower extremity neurological exam?
23
         A:    A strength exam, a sensory exam, and deep tendon
24        reflexes, generally.  Exhibit F, p. 54, ln. 17-21.

25  [72]   *Id.* at p. 71, ln. 10-22.

26

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

Q:    Well, there's also no indication of any sensory exam, correct?

A:    That is correct.

Q:    And do we know whether or not he did the deep tendon reflexes, from his chart, at the knee or the Achilles?

A:    I don't believe that it's noted.

Q:    And it's not noted and apparently he did not perform a Babinski exam?

A:    There's none noted.

Q:    Would you agree that, based upon your training, at least, at Hahnemann University as a physician assistant, that this chart is deficient in many ways, on the 22nd of May?

A:    I would have to agree that there is documentation lacking, yes, sir.[73]

PA Potashnick testified that pertinent positives and pertinent negatives should be documented:

Q:    All right.  Do you have any indication in this case that Mr. Davalos performed a Babinski examination on Mr. Johnson at any time?

A:    I did not see an indication of that, sir.

Q:    Were you trained at Hahnemann University to document both positive and negative findings on your chart?

A:    Pertinent positive and pertinent negatives, yes, sir.

                    *    *    *

Q:    All right.  So regardless if it's positive or negative, that's, in the face of a lower

_____
[73]    *Id.* at p. 74, ln. 9-24.

Gregory Johnson, et al. v. USA, et al.
Case No. 3:06-CV-00120-RRB
MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
REGARDING THE ISSUES OF INFORMED CONSENT AND NEGLIGENCE
Page 23 of 32

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

extremity neurological exam, you would document—you've been trained to document that on a chart?

\*   \*   \*

A:  I would document the findings of the exam.  I'm not sure that it would be positive or negative, but the findings of the exam.

Q:  But you would document what those findings were from a sensory exam?

A:  Yes, sir.[74]

Dr. Robert Janett concurs with PA Potashnick that the standard of care requires the performance and the documentation of a sensory exam.[75]  There is no documentation of these exams in the May 22nd "Patient Encounter Form" in conformity with the standard of care.[76]  In addition to failing to advise the Johnsons of the warning signs and symptoms of neurological compromise, PA Davalos fell below the standard of care on May 22, 2004 when he failed to properly perform and document the extent of his examination of Greg Johnson.

PA Davalos was negligent on May 22, 2004 in at least the ways presented herein.  Thus, the court should rule that the

---

[74]  *Id.* at p. 63, ln. 2-10, p. 64, ln. 11-14, 20-25.

[75]  See Affidavit of Robert Janett, M.D., dated 6/20/08 in support of the instant motion.

[76]  *Id.*

<u>Gregory Johnson, et al. v. USA, et al.</u>
Case No. 3:06-CV-00120-RRB
MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE ISSUES OF INFORMED CONSENT AND NEGLIGENCE
Page 24 of 32

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 • FAX (907) 277-9896

plaintiffs are entitled to judgment as a matter of law that PA Davalos was negligent on May 22, 2004.

> **2.    PA Davalos had a duty to recognize and appreciate Greg Johnson's symptoms of neurological compromise and to contact a supervising physician on May 23, 2004, a duty which he breached.**

PA Davalos conducted a patient visit at 11:00 a.m. on Sunday, May 23, 2004.  PA Davalos documented in his "Patient Encounter Form" that Greg Johnson had "Decreased strength with Dorsiflexion[77] of both feet."[78]  Davalos also noted, "Weak Planter [sic] flexion."[79]  Davalos stated, "Patient able to move both Upper legs but unable to sit."[80]  Critically, PA Davalos observed that Greg had "progressing Symptoms."[81]  However, the treatment recommendation was to "Continue current pain medication."[82]  A follow up appointment was made to "Send Patient via airplane to Anchorage on May 24, 2004."[83]

---

[77]    Dorsiflexion is the raising of the feet or toes upward toward the body.

[78]    Exhibit G.

[79]    *Id*.  Plantar flexion is pressing the toes downward, or away from the body, as when depressing the gas pedal on a vehicle.

[80]    *Id*.

[81]    *Id*.

[82]    *Id*.

[83]    *Id*.

LAW OFFICES
**DILLON & FINDLEY**
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

PA Davalos fell below the standard of care on May 23, 2004 when he failed to recognize and appreciate the signs and symptoms of neurological compromise, including decreased dorsiflexion strength, weak plantar flexion, and some loss of bladder control.

All expert witnesses retained in this case who have proffered an opinion on the standard of care agree that PA Davalos breached his duty of care on May 23, 2004. Defense expert witness PA Potashnick testified:

> Q:   … Do you believe that he [Davalos] fell below the standard of care of a physician [as spoken], trained and licensed and certified as a physician's assistant in the state of Alaska?
>
> A:   As of the second day [May 23, 2004], when he presented with urinary signs and symptoms, I believe that he did fail to act in the best interest of the patient.
>
> Q:   And do you believe that that's synonymous with falling below the standard of care as well?
>
> A:   Yes, sir.[84]

All of plaintiffs' experts concur with defense expert PA Potashnick's conclusion that PA Davalos fell below the standard of care on May 23, 2004. Plaintiffs' expert Cyndy Flores obtained her physician assistant education from Stanford

---

[84]   Exhibit F, p. 48, ln. 10-19.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

1   University.    She  has  been  a  certified  physician  assistant

2   practicing  in  the  emergency  room  for  18  years.    She  testified  at

3   deposition:

4
        A:   … and I actually agree with him [Potashnick] that
5            he says "At least by the second day, when there
             were clear changes in the neurological findings,
6            that    there    should    have    been    physician
             consultation," and I would  actually  agree  with
7            him on that point.   I feel there should have been
             consultation regarding the patient on day one but
8            definitely by day two.[85]

9       PA  Flores  testified  consistent  with  PA  Potashnick  that

10  there  was  an  unquestionable  breach  of  the  standard  of  care  on

11  May 23, 2004:

12
        A:   … even just given what you have right there, that
13           is enough to tell me that a supervising physician
             consult should have been done immediately on this
14           patient.    He himself [Davalos] recognizes these
             are progressing symptoms but I don't think that
15           he clearly understood the gravity.

16      Q:   And what do you think is the gravity?

17      A:   The  potential  for  poor  outcome.    This  is  a
             patient  with  worsening  bilateral  neurological
18           symptoms.

19                            *     *     *

20      A:   … I mean in addition to an immediate physician
             consult at this point, he needs to discuss the
21           immediate transfer of this patient.[86]

22

23  ————————————————
    [85]    Exhibit K, Deposition of  Cyndy  Flores,  dated  1/12/08,
24  p. 67, ln. 20-25, p. 68, ln. 1-2.

    [86]    *Id.* at p. 62, ln. 1-9, 13-15.
25

26
    <u>Gregory Johnson, et al. v. USA, et al.</u>
    Case No. 3:06-CV-00120-RRB
    MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
    REGARDING THE ISSUES OF INFORMED CONSENT AND NEGLIGENCE
    Page 27 of 32

Without question, the standard of care under the presenting signs and symptoms displayed by Greg Johnson on May 23, 2004 would have been to immediately contact a supervising physician. Ms. Flores stated:

Q:   … With respect to the findings on May 23rd, what should the plan have been, based on your training and experience?  And I want you to assume that nothing further was done than was stated on the clinical form in terms of an objective evaluation.

A:   Well, what should have been done at this point, then, is a call to the supervising physician and for him, I think, because we needed to facilitate a Medi-Vac transport out, if he felt that the patient was unable to sit, he can't fly commercial, so he needs to be flown out to, in this case, Anchorage.[87]

Plaintiffs also retained Robert Janett, M.D. to opine as to the standard of care for physician assistants.  Dr Janett is Board Certified in Internal Medicine.[88]  He has served as a commissioned officer in the U.S. Public Health Service and was stationed at the Tuba City Service Unit in Tuba City, Arizona from 1984 to 1987.  During that time, Dr. Janett supervised physician assistants and provided medical care to a rural population on the Navajo Indian Reservation.  Throughout his 23 years of experience in internal medicine, Dr. Janett has

---

[87]    *Id.* at p. 72, ln. 9-19.

[88]    See Affidavit of Robert Janett, M.D., dated 6/20/08, in support of the instant motion.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

supervised physician assistants and has also taught physician assistants. He has an academic appointment as Assistant Professor of Medicine at Harvard Medical School. Dr. Janett has also served as a Clinical Instructor in Health Sciences, Bouve College of Health Sciences, Physician Assistant Program.

Dr. Janett asserts that the standard of care dictates a PA must activate the emergency medical system if there is evidence either on history or on physical examination of progressive motor deficits, bladder or bowel symptoms, sensory deficits in the saddle area, or diminished anal sphincter muscle tone.[89] After thorough review of the medical records and depositions in this case, Dr. Janett concluded that PA Davalos fell below the standard of care when he failed to take emergency action to refer Greg Johnson to a center where imaging and definitive treatment of extradural spinal compression syndrome could be provided when Greg displayed progressively worse motor symptoms and bladder dysfunction.[90]

The evidence establishes that the standard of care requires a physician assistant to contact a supervising physician when presented with progressive neurological compromise. The record

---

[89]    *Id.*

[90]    *Id.*

is clear that PA Davalos <u>never</u> contacted or consulted a physician on May 23, 2004 when Greg Johnson exhibited urinary dribbling, decreased strength with dorsiflexion and weak plantar flexion.[91]

The record also indicates that PA Davalos typically collaborated with physicians when he had issues with a patient or questions regarding the treatment that should be provided:

> A.   … Many times I'll call Dr. O'Neill up on a patient, whether I'm having trouble with a patient or the system is in the way or any of these things, I'll call her up and I'll tell her what's going on.  Or sometimes one can't know everything, so you research out what you can and then you run it past the collaborator just one last time on certain things.  So that you have – a good collaborative [sic] is that you communicate quite a bit.[92]

Therefore, PA Davalos was aware that physician consultations were available to physician assistants who had questions regarding the proper diagnosis and treatment protocol for a patient.  Despite the fact that PA Davalos knew that a supervising physician was available via telephone in Nome, PA Davalos failed to contact a physician regarding Greg Johnson's ominous signs and symptoms of progressive neurological injury on May 23, 2004.  His failure to contact a physician for a

---

[91]   Exhibit E, p. 158, ln. 5-8.

[92]   *Id.* at p. 63, ln. 15-23.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

consultation and to discuss emergent transport of Greg Johnson out of Unalakleet to an appropriate treatment facility constituted a breach of the standard of care.

PA Davalos was negligent on May 23, 2004 in at least the ways presented herein.  Thus, the court should rule that the plaintiffs are entitled to judgment in their favor on May 23, 2004 as a matter of law.

### CONCLUSION

In light of the foregoing, the plaintiffs respectfully request the court to rule that, as a matter of law, PA Davalos failed to obtain informed consent to delay appropriate treatment for Greg Johnson on May 22 and 23, 2004 despite Greg's increasing signs of neurological injury as required by AS 09.55.556(a).  Furthermore, plaintiffs are entitled to a judgment that PA Davalos fell below the standard of care on May 22, 2004 when he failed to perform and/or document the results of a sensory examination.  Finally, plaintiffs request a ruling that PA Davalos was negligent when he failed to contact a supervising physician in the face of progressive neurological injury on May 23, 2004.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

DATED this 1st day of July 2008, at Anchorage, Alaska.

DILLON & FINDLEY, P.C.
Attorneys for Plaintiffs


By: s/Ray R. Brown
Ray R. Brown, ABA No. 8206012
1049 W. 5th Avenue, Suite 100
Anchorage, Alaska  99501
Phone:  277-5400
Fax:    277-9896
Email:  ray@dillonfindley.com


**CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2008 a copy of the foregoing MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE ISSUES OF INFORMED CONSENT AND NEGLIGENCE was served electronically on Susan J. Lindquist.


s/Ray R. Brown

Gregory Johnson, et al. v. USA, et al.
Case No. 3:06-CV-00120-RRB
MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
REGARDING THE ISSUES OF INFORMED CONSENT AND NEGLIGENCE
Page 32 of 32